UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **HERMAN ROBERTSON, III** | **CIVIL ACTION NO. 2:11-cv-1419** |
| | **SECTION P** |
| **VERSUS** | |
| | **JUDGE MINALDI** |
| **DEPUTY DAVENPORT, ET AL.** | **MAGISTRATE KAY** |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Herman Robertson, III, proceeding *in forma pauperis*, filed the instant civil rights complaint, pursuant to 42 U.S.C. § 1983, on August 1, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. At the time of filing, he was incarcerated at Calcasieu Correctional Center (CCC), Lake Charles, Louisiana. He was subsequently transferred to Elayn Hunt Correctional Center, St. Gabriel, Louisiana, and then to Winn Correctional Center (WCC), Winnfield, Louisiana, where he is currently incarcerated. Plaintiff complains of events that occurred at each facility. As defendants, plaintiff names CCC Deputy Davenport and Calcasieu Correctional Center.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE.**

*Background*

As previously stated, plaintiff was housed at CCC when he filed his initial complaint. Plaintiff complains of an incident that occurred on July 13, 2011, involving defendant Davenport. More specifically, plaintiff told Davenport that he had mail that needed to be picked up. Davenport gave plaintiff the time that mail was picked-up and told plaintiff that his mail was not going to be picked up until that time. This interchange occurred while Davenport (an EMT) was responding to plaintiff's request for a breathing treatment. Plaintiff then cursed at Davenport, who grabbed him by the shirt and asked him what he said. Plaintiff turned and came out of the dorm towards Davenport. Plaintiff was then shoved against the wall.

Plaintiff provided the court with a copy of the incident report (doc. 1, att. 1, p. 2) relative to this matter. The report stated that plaintiff requested a breathing treatment and Davenport, an EMT, went to check his chest. It was found that plaintiff did not need a breathing treatment as his lungs were clear and he was not wheezing. Plaintiff stated that he needed the treatment because he had phlegm in his throat. It was at this point that the discussion about the mail ensued and that the incident in question occurred. Plaintiff was charged and found guilty of a disciplinary violation as a result of the above incident. He lost commissary and telephone privileges for two weeks. Doc. 1, att. 1, p. 3.

Since filing his original complaint, plaintiff has filed over a dozen "letters" in support of his suit and/or adding new claims to his complaint. Included in these letters are numerous incident reports, grievances and responses thereto, and disciplinary findings. Throughout the letters, plaintiff complains that the prison staff does not care about the inmates and that they refuse to provide grievance and medical forms. He also complains that CCC houses DOC inmates with parish inmates and that the dorms at CCC are hot, making it difficult to breathe.

Further, plaintiff contends that the he has been denied good time and street credit, and that his discharge date is incorrect. Doc. 12, p. 2; doc. 31, p. 3.

Common to the majority of the letters is plaintiff's request to: (1) have the prison facilities inspected; (2) be transferred; and (3) participate in a work release program immediately. Plaintiff also seeks monetary and punitive damages. Doc. 1, p. 4.

### *Law and Analysis*

I.     **Frivolity Review**

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(I) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzales v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Independent Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

The court is convinced that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim

for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed.

### II. Calcasieu Correctional Center

Calcasieu Correctional Center is not a proper party to this suit. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether CCC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE ANN. art. 24. In Louisiana, correctional centers are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988). In other words, the State of Louisiana has not granted juridical status to CCC.

Plaintiff's suit against this non-juridical entity fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

### III. Interference with Mail

Plaintiff makes conclusory allegations that he has been subjected to interference with his mail (legal and otherwise).

Interference with a prisoner's legal mail by a prison official may violate the prisoner's right of access to the courts as found in the Due Process Clause, and/or the prisoner's First Amendment right to free speech, that is, freedom from unjustified governmental interference with communication. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Inmates have a First Amendment right both to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). However, that right does not preclude prison officials from

examining mail to ensure that it does not contain contraband. *See Brewer*, 3 F.3d at 821 (finding "[a] prisoner's freedom from censorship under the First Amendment . . . with regard to his incoming mail is not the equivalent of freedom from inspection or perusal") (citing *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

Plaintiff's complaint, even when liberally construed, fails to allege a claim under either constitutional provision. It is well settled that a prisoner does not have a constitutional claim if his incoming legal mail is opened and inspected outside of his presence, even if the inspection is in violation of prison regulations. *See Brewer*, 3 F.3d at 825 (recognizing that "the violation of [a] prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights" when there is no proof that such tampering was prejudicial to the inmate's access to the courts and when the practice was reasonable related to legitimate penological interests). Nor does plaintiff allege that he was prejudiced in any way in a legal proceeding because of interference with his mail. *See Lewis v. Casey*, 518 U.S. 343, 349-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (stating that an inmate alleging denial of access to the courts must demonstrate an actual injury stemming from the defendants' unconstitutional conduct).

Plaintiff's claim for interference with mail fails to state a claim upon which relief can be granted and should be dismissed as frivolous with prejudice.

### IV. *Medical Care*

Plaintiff's next claim is that he was denied proper medical treatment.

Medical care claims asserted by convicted prisoners are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently

harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (internal quotation omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (internal quotation omitted).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See, e.g., Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.

The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not

constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1981). Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to a constitutional dimension. *Varnado*, 920 F.2d at 321; *see also Spears*, 766 F.2d at 181-82 (a disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather*, 958 F.2d at 91.

In the instant case, the information contained in plaintiff's various filings shows that plaintiff received medical treatment, including medical visits and medication. Plaintiff's allegations, at most, state a disagreement between him and the medical staff regarding the procedures to treat his medical problems. As previously stated claims such as the ones made by plaintiff are insufficient to establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. *See Shaw v. Murphy*, 532 U.S. 223 (2001); *Procunier v. Martinez*, 416 U.S. 396 (1974). The decision regarding plaintiff's treatment is best left to the prison officials.

The facts of this matter clearly do not demonstrate that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly or evince a wanton disregard for his medical needs. The evidence before the court simply does not support a finding of deliberate indifference. Accordingly, this court finds that plaintiff's medical care claims should be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

### V.  *Housing Conditions (Temperature)*

In order to establish an Eighth Amendment violation, an inmate must establish both a subjective and objective component.  The <u>objective</u> requirement necessitates that the inmate allege a sufficiently serious deprivation.  *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)) (internal citation omitted).  While no precise definition determines what type of deprivations are construed as ones which deny an inmate the "minimal civilized measures of life necessities," the United States Supreme Court has held that such things as food, warmth, exercise and safety fall in into this category, as well as adequate medical care, and protection from physical abuse by other inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Wilson*, 501 U.S. at 298-99; *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).

The <u>subjective</u> component requires that a prison official act with a sufficiently culpable state of mind.  *Farmer*, 511 U.S. at 837-38.  A prison official's culpability is measured by deliberate indifference which is defined as <u>knowing and disregarding an excessive risk to inmate health or safety</u>.  *Id.*  Deliberate indifference is established by showing that the defendant officials were "aware of facts from which an inference of excessive risk to the prisoner's health and safety could be drawn and that they actually drew an inference that such harm existed."  *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001) (quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law.  *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir.

1997). Accordingly, negligence, and even gross negligence, does not implicate the Constitution and does not provide a basis for a § 1983 claim. *Farmer*, 511 U.S. at 835.

In the present case, plaintiff complains that his prison dorm at CCC was kept too hot. Plaintiff's complaint fails to set forth a cause of action. As previously stated, in order to establish an Eighth Amendment violation of this sort, an inmate must allege a sufficiently serious deprivation and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to constitute cruel and unusual punishment. An inmate must also establish that a prison official acted with a sufficiently culpable state of mind measured by deliberate indifference which is defined as knowing and disregarding an excessive risk to inmate health or safety. Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind.

Plaintiff's complaints make it clear that he was not denied anything close to a minimal measure of life's necessities. His allegations do not rise to the level of an Eighth Amendment violation and these claims should be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

### VI. *Transfer*

To the extent that plaintiff has requested a transfer to different DOC facilities, this request is without merit as he does not have a protected liberty interest in where he is placed. *See Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed. 2d 451 (1976).

### VII. *Investigate/Inspect Prison Facilities*

Plaintiff requested that this court inspect the various prison facilities in which he has been incarcerated.

The undersigned notes that such relief is not available through this complaint. Such actions are within the province of the police department and district attorney's office of the parish where any alleged violations took place. The court's duty is to review the plaintiff's compliant for alleged violations of his constitutional rights, and not to act as a policeman for the plaintiff. Thus, plaintiff has failed to state a claim for which relief may be granted.

### VIII. *Excessive Force*

For excessive force claims brought by prisoners, "'[t]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)) (emphasis omitted); *accord Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). The malicious and sadistic use of force to cause harm violates contemporary standards of decency; however, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. *Hudson,* 503 U.S. at 9. A use of force which is not "repugnant to the conscience of mankind," is excluded from the Eighth Amendment's prohibition of cruel and unusual punishment and is considered to be *de minimis*. *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986).

In this case, plaintiff admits that he cursed at Deputy Davenport and physically advanced towards the deputy. There is no doubt that use of force in this case was not "repugnant to the conscience of mankind," and does not fall with the Eighth Amendment's prohibition of cruel and unusual punishment. Thus, plaintiff's claim of excessive use of force should be dismissed.

### IX. Grievance Forms

Plaintiff's allegations that he was not provided with grievance forms does not rise to the level of a constitutional violation. Plaintiff fails to allege that he was denied a grievance form as a form of punishment and no punitive intent can be inferred, as plaintiff clearly had access to ordinary paper.

Further, plaintiff has no constitutional right to have grievances entertained. More specifically, "when the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Oladipupo v. Austin*, 104 F. Supp.2d 626, 637 (W.D. La. 2000) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves plaintiff without a federally protected right to have his complaints and grievances investigated and resolved. Inasmuch as the result of these complaints and grievances has no bearing on the duration of plaintiff's confinement, plaintiff cannot show the existence of a state created liberty interest in their investigation and ultimate resolution. *See Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995). In sum, as plaintiff does not have a constitutional right to have his grievances entertained, it follows that he does not have a constitutional right to grievance forms. Consequently, this claim lacks an arguable basis in law and should be dismissed as frivolous as such claims are not cognizable under § 1983.

### X. Loss of Good Time Credit/Disciplinary Proceedings

"A prisoner cannot, in a § 1983 action, challenge the fact or duration of his confinement or recover good-time credits lost in a prison disciplinary proceeding." *Clarke v. Stalder*, 154

F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973)). Thus, to the extent that plaintiff seeks through this proceeding restoration of forfeited "good time credits," he has failed to state a claim for which relief may be granted and his complaint is subject to dismissal on that basis. The restoration of forfeited good time credits must be pursued in a *habeas corpus* action filed pursuant to 28 U.S.C. § 2241. *Preiser*, 411 U.S. at 500. A *habeas corpus* action must be filed in the district court where the prisoner is in custody, and, the proper respondent in such action is the person exercising custody over the prisoner. *See* 28 U.S.C. §§ 2241(d) and 2243.

To the extent that plaintiff seeks monetary damages because of the disciplinary hearings that resulted in the loss of good time credit, his complaint fares no better. Prisoners cannot bring a civil rights action pursuant to § 1983 action seeking damages based upon irregularities in a prison disciplinary proceeding that resulted in the forfeiture of "good time credits," until the offending disciplinary conviction has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of *habeas corpus*, if a favorable judgment in the civil rights action would necessarily imply the invalidity of the disciplinary conviction at issue. *Clarke*, 154 F.3d at 189; *see also Edwards v. Balisok*, 520 U.S. 641, 644, 117 S.Ct. 1584, 1587 (1997) (citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)).

It is abundantly clear that a favorable judgment in plaintiff's favor in this proceeding would, of necessity, call into question the validity of the underlying disciplinary proceedings; therefore, he cannot obtain monetary damages relative to the disciplinary convictions until such time as they have been reversed, expunged, or otherwise set aside. Clearly, that has not

happened. Thus, to the extent that plaintiff seeks monetary damages for his prison disciplinary convictions; his complaint must be dismissed as frivolous.

## XI. *Recalculation of Discharge Date*

Plaintiff also seeks recalculation of his release date. Such relief is not available by way of a civil rights action. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).

A section 1983 action is appropriate for recovering damages resulting from illegal administrative procedures; a *habeas* action is the appropriate federal remedy for a state prisoner challenging the fact or duration of his confinement. *See Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166, 168 (5th Cir. 1994). Thus, plaintiff's claim in regard to his discharge date must be dismissed.

## XII. *Work-Release*

Plaintiff requests immediate placement in a work release program.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff has neither a liberty nor property interest in the work release program and therefore, this claim is frivolous. La. R.S.15:1111, the statute establishing the work release program, provides in part, "The department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any inmate sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program . . ." LA. REV. STAT. ANN. § 15:1111(B).

In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work release. *Id.* at 644. In short, the Fifth Circuit has held that "La. R.S.15:1111 does not create a liberty interest subject to the Due Process Clause." *Id.* Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, a person must "have a legitimate claim of entitlement to it." *Id*. Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id*. at 576. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit [.]" *Evans v. Citv of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988).

Plaintiff can point to no rule or understanding which entitles him to participate in the program. In any event, the Fifth Circuit has also held that prisoners have no property interest in work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995).

Plaintiff is not entitled to participate in the Louisiana work-release program and such claims are subject to dismissal as frivolous.

### XIII. Shared Housing

Plaintiff complains that he has been housed with parish inmates and that he has gotten into altercations with these inmates. As it is not *per se* unconstitutional to house pretrial detainees and convicted inmates together,[1] it follows that it is not unconstitutional to house convicted inmates (DOC inmates, parish inmates, or the like) together. Significantly, the classification of inmates is an administrative function of the prison. *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981).

Courts afford great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Smith v. Bingham,* 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994) (citing *Swenson v. Trickey*, 995 F.2d 132, 134 (1993)); *accord Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir. 1995). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." *Woods*, 51 F.3d at 581-82 (internal quotation omitted). Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir.

---

[1] *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981)

1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001).

To the extent that plaintiff is attempting to make a 'failure to protect' claim, the standard governing a prison official's failure to prevent harm by other inmates is set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). The plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the defendants acted with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. "Deliberate indifference" lies between negligence and purpose or knowledge; it is "the equivalent of recklessly disregarding [a] risk." *Id*. at 836. This recklessness standard means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

While the plaintiff's altercations with parish inmates are regrettable, not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "Prison officials are not . . . expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834).

In sum, plaintiff has failed to demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendants' state of mind was one of "deliberate indifference" to his safety, and any failure to protect claim is dismissed.

*Conclusion*

For reasons set forth above,

IT IS RECOMMENDED that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii) and 1915A(b)(1).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Services Auto. Ass'n,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 23rd day of January, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE